UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

MARKO HASANAJ,

    Defendant.
_____/

Case No. 04-80174

Honorable Nancy G. Edmunds

**OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS INDICTMENT**

On August 5, 2004, an information was filed against Defendant for reentry of an alien deported after a felony conviction, 8 U.S.C. § 1326(a), (b)(1) (Count One).[1] Defendant waived indictment and acknowledged the information on August 31, 2004. This matter comes before the Court on Defendant's motion to dismiss the indictment because the underlying deportation orders were improper. Defendant's motion is DENIED because he fails to meet the necessary requirements to collaterally attack his prior deportation order.

**I. Facts**

On or about November 7, 1973, Defendant, who is a native and citizen of Yugoslavia, entered the United States as a Conditional Entry Refugee at the age of 7. (Defendant's Brief, Exhibit C). In 1976, Defendant received lawful permanent resident status and was deemed a legal resident since his entry on November 7, 1973.

---

[1] The criminal complaint charges Defendant in violation of 8 U.S.C. § 1326(b)(2). However, the information charges Defendant in violation of 8 U.S.C. § 1326(a), (b)(1). Because the information is most recent, it is assumed to be correct.

On October 24, 1985, Defendant was convicted in Macomb County Circuit Court of the felony offense of assault and battery. Defendant was convicted again on May 19, 1989 in Detroit Recorder's Court for unlawful use of codeine contrary to the provisions of M.C.L.A. Section 333.7403(2)(b).

Based on this second conviction, deportation proceedings were initiated. Defendant's attorney, Carl Weideman, Jr., did not file for relief under Section 212(c) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(c) (repealed).[2] His attorney did file Form I-191 (application for permanent resident to return to the United States to an unrelinquished domicile) with the Immigration and Naturalization Service on April 20, 1990. A deportation hearing was held in abstentia, both Defendant and his attorney failed to appear, and Defendant was ordered deported pursuant to Section 241(a)(11) of the INA on July 17, 1990.

Although Weideman, Defendant's attorney, did not file a petition for discretionary relief under § 212(c), the attorney did appeal the deportation order on July 27, 1990. The Board of Immigration Appeals denied the appeal and upheld the deportation order on April 7, 1993.

Defendant remained in the United States and was convicted in Lapeer County, Michigan of the felony of breaking and entering with intent on June 11, 1997. After this conviction, he was physically deported from the United States on April 2, 1998, under Section 241(a)(11) of the Immigration and Nationality Act (INA).

---

[2] In 1996, Section 304 of the Illegal Immigration Reform and Immigration Responsibility Act repealed and replaced Section 212(c) with a more strict procedure designated "cancellation of removal." *United States v. Johnson*, 391 F.3d 67, 69-70 (2d Cir. 2004). Section 304 is not retroactively applicable to aggravated felons whose convictions predated the effective date of that statute. *Id.* at 71.

Defendant reentered the United States sometime prior to October 24, 2000 when he was arrested by police from Hamtramack, Michigan, and charged with a probation violation. On April 4, 2001, Defendant was convicted in Wayne County, Michigan of the felony of delivery/manufacturing prescriptions. Defendant plead guilty in this Court before Judge Borman on May 13, 2002 to a charge of reentry of alien deported after felony conviction, in violation of 8 U.S.C. § 1326. On December 3, 2002, his prior deportation order was reinstated and he was again removed to Yugoslavia as an aggravated felon.

Defendant reentered the United States again and was arrested by the Clinton Township Police Department for disorderly conduct on January 27, 2004. After investigations, the Clinton Township Police Department determined that Defendant had previously been removed from the United States and the U.S. Immigration and Customs Enforcement was notified of Defendant's presence. Defendant did not receive express permission from the Attorney General to reenter and was indicted with reentry of alien deported after felony conviction in violation of 8 U.S.C. § 1326(a), (b)(1) on August 31, 2004.

**II. Analysis**

**A. Reentry of Alien Deported After Felony Conviction**

Title 8 U.S.C. § 1326(a) provides that "any alien who has been denied admission, excluded, deported, or removed...and thereafter enters, attempts to enter, or is at any time found in the United States, unless [the Attorney General has expressly consented to reentry or the alien was not required to obtain consent] shall be fined under Title 18 or imprisoned not more than 2 years, or both." Subsection (b)(1) further provides that in the case of an alien "whose removal was subject to a conviction for commission of three or

more misdemeanors involving drugs, crimes against the person, or both, or a felony (other than an aggravated felony), such alien shall be fined under Title 18, imprisoned not more than 10 years, or both."

To prove a violation of § 1326, the government must establish these four elements: the defendant (1) is an alien; (2) who previously was denied admission, was excluded, deported, or removed; (3) and subsequently attempted to reenter, reentered, or was found in the United States; (4) without having the express consent of the Attorney General. *See generally United States v. Cardenas-Alvarez*, 987 F.2d 1129, 1131-1132 (5th Cir. 1993). The Supreme Court has rejected the view that a lawful deportation is an element of the offense. *United States v. Mendoza-Lopez*, 481 U.S. 828, 839 (1987). But, if the claimed illegality of the deportation rises to the level of a due process violation, that deportation cannot be used to establish the second element of a § 1326 violation. *Id*. The second element is at issue here as Defendant contends the prior deportation was illegal because (1) his refugee status was not terminated when he became a lawful permanent resident and thus the immigration judge had no authority to deport him; and (2) the deportation hearing violated his due process rights because he did not receive effective assistance of counsel, was stripped of the right to live with and support his family, and was deported in abstentia.

**B. Collateral Attack of Prior Deportation Order**

The Supreme Court held that while the lawfulness of the prior deportation is not an essential element in a criminal prosecution for violation of § 1326, a defendant can mount a collateral challenge to the deportation order in a pretrial motion to determine whether there was a violation of due process. *Mendoza-Lopez*, 481 U.S. at 839. In 1996, Congress

effectively codified the holding in *Mendoza-Lopez* by amending 8 U.S.C. § 1326 to include subsection (d) which provides that:

> In a criminal proceeding under this section, an alien may not challenge the validity of the deportation order described in subsection (a)(1) of this section or subsection (b) of this section unless the alien demonstrates that–
> (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;
> (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and
> (3) the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d). "A collateral attack on a deportation order is authorized under the limited circumstances described in § 1326(d), but such a challenge to the validity of a deportation order is essentially a motion to exclude evidence–the deportation order–and is typically presented in the context of a motion to dismiss the alien's indictment." Kurtis A. Kemper, Annotation, *Illegal Reentry Under § 276 of Immigration and Nationality Act (8 U.S.C.A. § 1326) of Alien Who Has Been Denied Admission, Excluded, Deported, or Removed or Has Departed United States While Order of Exclusion, Deportation, or Removal is Outstanding*, 177 A.L.R. Fed. 459, 484 (2002) (citing *United States v. Rueda-Miranda*, 121 F.3d 719 (9th Cir. 1997) and *United States v. Esparza-Ponce*, 7 F. Supp. 2d 1084 (S.D. Cal. 1998), *aff'd on other grounds*, 193 F.3d 1133 (9th Cir. 1999)).

In order for Defendant's motion to dismiss to succeed, he must prove that he satisfies all three requirements to wage a collateral attack on the prior deportation order and that he was prejudiced by either the lack of an opportunity for judicial review of the deportation order or the fundamental unfairness of the order. *United States v. Galaviz-Galaviz*, No. 95-1530, 1996 U.S. App. LEXIS 36531 (6th Cir. July 23, 1996). If Defendant meets the three requirements of § 1326(d) and proves prejudice, his collateral attack will be successful and the indictment should be dismissed.

Neither party specifically addresses whether Defendant has met the three requirements necessary to mount a collateral attack. Rather, Defendant argues that subsection (d) is unconstitutional because Congress has legislatively superceded the rule of the Supreme Court in *Mendoza-Lopez* by adding the additional requirement that an alien must exhaust any administrative remedies that may have been available to seek relief against the order. Defendant's contention is incorrect as § 1326(d) is, on its face, wholly consistent with the dictates of *Mendoza-Lopez*. *See United States v. Johnson*, 391 F.3d 67, 74 (2nd Cir. 2004). The statute is designed to carry out the Supreme Court's mandate for ensuring due process in any collateral attack on a deportation order. *Id.* at 73. Further, the exhaustion requirement does not foreclose or even limit judicial review, it merely requires an alien to pursue his due process objections through the administrative process before seeking judicial review, unless some defect in the process prevented him from doing so in the first place. *Id.* at 74.

### 1. Exhaustion of Administrative Remedies

Defendant must demonstrate that he has exhausted any administrative remedies that were available to him in order to seek relief from the deportation order. It has been held that an alien who fails to appeal a deportation order to the BIA has not exhausted his administrative remedies. *United States v. Perez*, 330 F.3d 97 (2nd Cir. 2003); *United States v. Estrada-Torres*, 179 F.3d 776 (9th Cir. 1999). Defendant satisfies this requirement as his attorney filed an appeal of the Immigration Judge's deportation order with the BIA on July 27, 1990.

### 2. Deprivation of the Opportunity for Judicial Review

Defendant alleges that his due process rights were violated. Specifically, he argues that, when counsel failed to file for discretionary relief from the deportation order under § 212(c), he was deprived of judicial review. Both parties mistakenly claim that Defendant is entitled to the Sixth Amendment right to effective counsel. A deportation proceeding is a civil, not criminal, proceeding and thus the Sixth Amendment is not applicable. *United States v. Perez*, 330 F.3d at 101. Defendant is, however, entitled to the Fifth Amendment due process rights to protection of life, liberty, and property. *Id.*

In a case addressing a defendant's right to suspension of deportation under § 244(a), the Sixth Circuit held that an alien "has no constitutionally-protected liberty interest in obtaining discretionary relief from deportation." *Ashki v. INS*, 233 F.3d 913, 921 (6th Cir. 2000). Quoting with approval a recent Fourth Circuit decision, the *Ashki* court observed that:

> Eligibility for suspension is not a right protected by the Constitution. Suspension of deportation is rather an "act of grace" that rests in the "unfettered discretion" of the Attorney General. Because suspension of deportation is discretionary, it does not create a protectible liberty or property interest. This is true even where the state "frequently" has granted the relief sought.

*Ashki v. INS*, 233 F.3d at 921, (*quoting Appiah v. INS*, 202 F.3d 704, 709 (4th Cir. 2000)). Although the Court in *Ashki* did not address relief under § 212(c), both §§ 244(a) and 212(c) are forms of discretionary relief. Thus, although ineffective assistance of counsel can constitute a denial of due process, Defendant's due process rights were not violated when his counsel failed to file for § 212(c) relief because he had no constitutional right to the relief. *Compare with Perez*, 330 F.3d 97.

### 3. Fundamental Unfairness

Even if Defendant were able to satisfy the requirements of exhausting all administrative remedies and deprivation of judicial review, he still needs to prove that the proceeding was so fundamentally unfair as to cause him actual prejudice. The Sixth Circuit interpreted the Supreme Court's decision in *Mendoza-Lopez* "as allowing a defendant's collateral challenge to a deportation hearing where defendant can show that (1) he was effectively deprived of the right to judicial review and (2) the hearing was fundamentally unfair in the sense that defendant was prejudiced by the procedural errors." *United States v. Galaviz-Galaviz*, No. 95-1530, 1996 U.S. App. LEXIS 36531 (6th Cir. July 23, 1996). In order to prove prejudice, the alien must show there was a reasonable likelihood that, but for the alleged deficiency, he would not have been deported. *United States v. Encarnacion-Galvez*, 964 F.2d 402, 407 (5th Cir. 1992). Further, a majority of courts of appeals that have addressed this issue require the defendant to show *actual* prejudice, beyond showing merely that the defendant *might* have been afforded some relief. *See United States v. Perez*, 330 F.3d 97 (2nd Cir. 2003); *United States v. Loasiga*, 104 F.3d 484, 487 (1st Cir. 1997); *United States v. Perez-Ponce*, 62 F.3d 1120, 1122 (8th Cir. 1995); *United States v. Espinoza-Farlo*, 34 F.3d 469, 471 (7th Cir. 1994); *United States v. Meaz-Valeta*, 26 F.3d 992, 998 (10th Cir. 1994); *United States v. Proa-Tovar*, 975 F.2d 592, 595 (9th Cir. 1992); *Figueroa v. INS*, 886 F.2d 76, 78 (4th Cir. 1989); *United States v. Holland*, 876 F.2d 1533, 1537 (11th Cir. 1989). The Sixth Circuit has not yet addressed this issue.

The Government argues that Defendant has failed to demonstrate actual prejudice from the alleged deficiencies in the proceedings and therefore the deportation order was not fundamentally unfair as required by § 1326(d)(3). Defendant contends that he was

actually prejudiced because he would not have been deported if his refugee status was recognized[3] or if his due process rights, specifically the right to live with and support one's family[4] and the right to effective assistance of counsel[5], were not violated. Because Defendant has failed to demonstrate prejudice or establish a legitimate basis on which the deportation order can be attacked, the deportation order was not fundamentally unfair as required by § 1326(d)(3).

### III. Conclusion

For the foregoing reasons, Defendant's motion to dismiss the indictment is DENIED.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: July 26, 2005

I hereby certify that a copy of the foregoing document was served upon counsel of record on July 26, 2005, by electronic and/or ordinary mail.

s/Carol A. Hemeyer
Case Manager

---

[3] Defendant was no longer considered a refugee when he acquired permanent resident status. Defendant was admitted as a "conditional" refugee (Defendant's Brief, Exhibit C), which indicates his refugee status was not intended to be permanent. Also, all cases and secondary sources addressing the issue have referred to the process as an "adjustment of status," which means Defendant's status was changed from a refugee to that of a permanent resident. Finally, the Board of Immigration Appeals has reached the same conclusion, holding that refugee status terminates when one becomes a permanent resident. *Matter of Bahta*, 22 I.&N. Dec. 1381 (BIA 2000).

[4] The right to live with and support one's family is a substantive due process right. Defendant needs to demonstrate that the proceeding was fundamentally unfair in the sense that he was prejudiced by *procedural* errors. Therefore, Defendant cannot attack the deportation order on this basis.

[5] Defendant claims that due to ineffective assistance of counsel, he was deported in abstentia. The record provided here establishes that Defendant's attorney was given notice and there is no factual basis to establish otherwise. Thus entry of the deportation order was not fundamentally unfair. *See United States v. Zelaya*, 293 F.3d 1294 (11th Cir. 2002) (where there was no factual basis in the record establishing a lack of notice, the purported lack of notice of the deportation proceeding did not render entry of the order fundamentally unfair).